**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

WILDEARTH GUARDIANS

        Plaintiff,

v.

LISA P. JACKSON, in her official capacity as
ADMINISTRATOR,
UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY

        Defendant.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.     Plaintiff WildEarth Guardians ("Guardians") brings this Clean Air Act citizen suit to compel the Defendant, Lisa Jackson, Administrator of the U.S. Environmental Protection Agency ("EPA"), to perform her non-discretionary duty to grant or deny a petition filed by Guardians on March 24, 2011.  See 42 U.S.C. § 7661d(b)(2) (authorizing such petitions). Guardians' petition ("the Petition") asks EPA to object to an air pollution permit (the "Permit") issued by the Colorado Department of Public Health and Environment, Air Pollution Control Division, to CF&I Steel, d/b/a EBRAZ Rocky Mountain Steel for operation of its steelmaking facility in Pueblo, Colorado (hereafter referred to as the "Steel Mill").

2. Title V of the Clean Air Act establishes a mandatory 60-day deadline for EPA to grant or deny a citizen petition for an objection to a Title V permit. 42 U.S.C. § 7661d(b)(2). Although more than 60 days have passed, the EPA Administrator has not acted on Guardians' Petition and is in violation of a nondiscretionary duty under the Act. Guardians seeks a declaration that the Administrator is in violation of the Clean Air Act and an order compelling the Administrator to grant or deny its Petition.

### JURISDICTION, NOTICE, AND VENUE

3. This is an action against the Administrator where there is alleged a failure of the Administrator to perform an act or duty under the Clean Air Act which is not discretionary with the Administrator. Thus, this Court has jurisdiction over Guardians' claims herein pursuant to 42 U.S.C. § 7604(a)(2) (citizen suit provision of the Clean Air Act) and 28 U.S.C. § 1331 (federal question).

4. The requested declaratory relief is authorized by 28 U.S.C. § 2201(a) and 42 U.S.C. § 7604(a). The requested injunctive relief is authorized by 28 U.S.C. § 2202 and 42 U.S.C. § 7604(a). 42 U.S.C. § 7604(d) authorizes this Court to award Guardians its costs and attorneys' fees.

5. By letter dated June 7, 2011, Guardians provided the Administrator with written notice of Guardians' claims concerning EPA's failure to take action on the Petition and of Guardians' intent to bring suit to remedy this violation of the Clean Air Act. Guardians provided this notice pursuant to 42 U.S.C. § 7604(b)(2), and 40 C.F.R. §§ 54.2 and 54.3. Although more than 60 days have elapsed since Guardians gave notice, EPA has not yet granted or denied Guardians' Petition and remains in violation of the law. There exists now between the parties an

actual, justiciable controversy within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) because a substantial part of the events and omissions giving rise to Guardians' claim occurred in the District of Colorado. Guardians' Petition concerns a Permit issued by an administrative agency of the State of Colorado regulating air pollution from the Steel Mill in Pueblo, Colorado. Additionally, Guardians maintains a major office in Denver, Colorado.

## PARTIES

7. Plaintiff WILDEARTH GUARDIANS is a non-profit conservation organization. Guardians is dedicated to protecting and restoring wildlife, wild rivers, and wild places in the American West, and to safeguarding the Earth's climate and air quality. Guardians and its members work to reduce harmful air pollution in order to safeguard public health, welfare, and the environment. Guardians has approximately 4,500 members, many of whom live, work, and/or recreate in areas affected by pollution from the Steel Mill.

8. Guardians is a "person" within the meaning of 42 U.S.C. § 7602(e). As such, Guardians may commence a civil action under 42 U.S.C. § 7604(a).

9. Guardians' members live, raise their families, work, recreate, and conduct educational, research, advocacy, and other activities in areas that will be affected by pollution from the Steel Mill. The Permit allows the Steel Mill to release pollutants that degrade the air, environment, economy, and scenery used by Guardians' members. These pollutants harm the economic, health, aesthetic, recreational, procedural, and organizational interests of Guardians' members. EPA's failure to respond to Guardians' Petition creates doubt and concern for

Guardians' members about whether the Steel Mill Permit complies with the requirements of the Clean Air Act and protects them from exposure to pollutants to the extent required by law.

10. Guardians regularly participates in the public permitting process for facilities that emit air pollution. Guardians spends money and time on these processes with the aim of ensuring that permits, such as that issued to the Steel Mill, protect and improve air quality, as well as comply with relevant laws and regulations. Guardians and its members have a substantial interest in ensuring that EPA complies with federal law, including the requirements of the Clean Air Act.

11. During the permitting process for the Steel Mill, Guardians provided comments critical of the Permit's terms and limits. Subsequently, Guardians petitioned EPA to object to the issuance of this Permit. The Clean Air Act gives Guardians a procedural right to a timely decision on its Petition. This interest and Guardians' organizational interest in participating in the permitting process are injured by EPA's failure to respond to Guardians' Petition. Guardians' and its members' interests have been, are being, and will continue to be, irreparably harmed by EPA's failure to act on Guardians' Petition for an objection to the Steel Mill Permit.

12. EPA's failure to take action on Guardians' Petition prevents Guardians and its members from challenging an unfavorable EPA decision or from benefiting from a favorable decision on the Petition. EPA's decision on the Petition, if favorable, is likely to result in changes to the Permit that would reduce pollution from the facility. An unfavorable decision on the Petition would allow Guardians to bring a challenge to EPA's decision. The Clean Air Act violations alleged in this Complaint have injured and continue to injure the interests of Guardians and its members. Granting the relief requested in this lawsuit would redress these injuries by

compelling EPA action that Congress determined to be an integral part of the regulatory scheme for protecting human health from the effects of unregulated air pollution.

13. Defendant LISA JACKSON is the Administrator of the EPA. The Administrator is responsible for implementing the Clean Air Act, including the requirement to grant or deny Guardians' Petition within 60 days. Ms. Jackson is sued in her official capacity.

## LEGAL FRAMEWORK

14. The Clean Air Act aims "to protect and enhance the quality of the Nation's air resources." 42 U.S.C. § 7401(b)(1). To help meet this goal, the 1990 amendments to the Clean Air Act created the Title V permit program—an operating permit program that applies to all major sources of air pollution. See 42 U.S.C. §§ 7661-7661f.

15. A primary purpose of the Title V permitting program is to reduce violations of the Clean Air Act and improve enforcement by recording in a single document all of the air pollution control requirements that apply to a major source of air pollution. Major sources of air pollution cannot legally discharge pollutants into the air unless they have a valid Title V operating permit. See 42 U.S.C. § 7661a(a).

16. The Clean Air Act provides that the Administrator may approve state programs to administer the Title V permitting program with respect to sources within their borders. See 42 U.S.C. § 7661a(d). The Administrator approved Colorado's administration of its Title V permit program in 2000. See 65 Fed. Reg. 49,919 (Aug. 16, 2000). The Colorado Department of Public Health and Environment, Air Pollution Control Division ("APCD") is responsible for issuing Title V permits in Colorado.

17. Before a state with an approved Title V permit program can issue a Title V

permit, the State must forward the proposed Title V permit to EPA. See 42 U.S.C. § 7661d(a)(1)(B). EPA then has 45 days to review the proposed permit. EPA must object to the issuance of the permit if EPA finds that the permit does not comply with all applicable provisions of the Clean Air Act. See 42 U.S.C. § 7661d(b)(1).

18. After EPA's 45-day review period expires, and if EPA does not object to the permit issuance, "any person may petition the Administrator within 60 days" to object to the proposed permit. 42 U.S.C. § 7661d(b)(2).

19. Once EPA receives such a petition, the Clean Air Act requires that "[t]he Administrator shall grant or deny such petition within 60 days after the petition is filed." 42 U.S.C. § 7661d(b)(2).

20. If EPA objects to a permit, the permit must be revised. 42 U.S.C. § 7661d(b)(3).

21. If EPA fails to comply with a non-discretionary duty, such as acting on a petition within the statutorily mandated timeframe, the Clean Air Act allows any person to bring suit to compel EPA to perform its duty. See 42 U.S.C. § 7604(a)(2).

**FACTUAL ALLEGATIONS**

22. The Steel Mill is a major stationary source of air pollution located in Pueblo, Colorado. The facility consists of an electric arc furnace that melts scrap steel, along with various additives, to produce specific grades of steel.

23. According to the Technical Review Document for the Title V permit, the Steel Mill has the potential to emit nearly 3,000 tons of toxic air pollutants, including: 1,540.2 tons of carbon monoxide, 531.4 tons of nitrogen oxides, 242.1 tons of particulate matter, including 193.5 tons of particulate matter less than 10 microns in diameter, 170.2 tons of sulfur dioxide, 179.3

tons of volatile organic compounds, and 18.5 tons of hazardous air pollutants, including mercury, lead, and other toxic pollutants.

24. Guardians submitted detailed comments on November 8, 2010, during the APCD's public comment period for the Title V Permit. Guardians raised a number of objections to the Title V Permit, including, among other things, that the APCD failed to ensure compliance with requirements limiting mercury emissions, requirements to ensure that emissions complied with National Ambient Air Quality Standard ("NAAQS"), and requirements related to environmental justice.

25. The APCD submitted the proposed Title V permit for the Steel Mill to EPA on December 9, 2010. The EPA's 45-day review period for the permit ended on January 23, 2011. EPA did not raise any objections to the permit.

26. On March 24, 2011, Guardians filed a petition requesting that the Administrator object to the issuance of the Title V permit for the Steel Mill on the basis that the permit failed to ensure compliance with area source maximum achievable control technology requirements; failed to ensure the Steel Mill would not cause or contribute to violations of the NAAQS; failed to include stipulated penalty requirements; and failed to adequately address environmental justice.

27. Guardians timely filed its Petition for objection within 60 days following the conclusion of EPA's review period. 42 U.S.C. § 7661d(b)(2).

28. Guardians' Petition was based on objections that were raised with reasonable specificity during the public comment period for the draft permit or arose subsequent to the public comment period, in accordance with 42 U.S.C. § 7661d(b)(2).

29. EPA had 60 days, until May 23, 2011, to grant or deny Guardians' Petition. 42 U.S.C. § 7661d(b)(2). As of the date of filing of this complaint, EPA has not yet granted or denied Guardians' Petition.

30. By letter dated June 7, 2011, Guardians provided the Administrator with written notice of its intent to sue for EPA's failure to take action on Guardians' Petition. The Administrator received this notice letter via certified mail on or before June 13, 2011. Although more than 60 days have elapsed since Guardians gave notice, EPA remains in violation of the law.

## CLAIM FOR RELIEF
### Failure to Grant or Deny Guardians' Petition

31. Guardians incorporates the allegations in all preceding paragraphs of this Complaint as if set forth in full herein.

32. The Administrator had a mandatory duty to grant or deny Guardians' Petition within 60 days after it is filed. See 42 U.S.C. § 7661d(b)(2).

26. It has been more than 60 days since the Administrator received Guardians' Petition requesting that EPA object to the Title V Permit for the Steel Mill.

28. Accordingly, the EPA Administrator has violated and continues to violate the Clean Air Act, 42 U.S.C. § 7661d(b)(2).

29. This Clean Air Act violation constitutes a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator" within the meaning of the Clean Air Act's citizen suit provision. 42 U.S.C. § 7604(a)(2). EPA's violation is ongoing, and will continue unless remedied by this Court.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff WildEarth Guardians requests that this Court enter judgment providing the following relief:

A.     A declaration that EPA has violated the Clean Air Act by failing to grant or deny Guardians' Petition requesting that EPA object to the Title V permit for the Steel Mill;

B.     An order compelling EPA to grant or deny Guardians' Petition for an objection to the Title V permit for the Steel Mill in accordance with an expeditious schedule prescribed by the Court and to publish in the Federal Register a notice granting or denying Guardians' Petition within ten working days of EPA's decision;

C.     An order retaining jurisdiction over this matter until such time as EPA has complied with its non-discretionary duties under the Clean Air Act;

D.     An order awarding Guardians its costs of litigation, including reasonable attorneys' fees; and

E.     Such other and further relief as the Court deems just and proper.

Respectfully submitted this 24th day of August, 2011,

                                          */s/ Ashley D. Wilmes*
                                          Ashley D. Wilmes
                                          WildEarth Guardians
                                          827 Maxwell Avenue, Suite L
                                          Boulder, Colorado 80304
                                          Tel. 859-312-4162
                                          awilmes@wildearthguardians.org

                                         */s/ James J. Tutchton*
                                         James J. Tutchton
                                         WildEarth Guardians
                                         6439 E. Maplewood Ave.
                                         Centennial, CO 80111
                                         Tel. 720-301-3843
                                         jtutchton@wildearthguardians.org

                                       *Attorneys for WildEarth Guardians*

Plaintiff:
WildEarth Guardians
1536 Wynkoop Street, Suite 301
Denver, Colorado 80202